# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

In Re: JERRI S. RUSSELL,
*Debtor.*

DARRELL WILSON,
*Plaintiff-Appellant,*

v.

THE CINCINNATI INSURANCE COMPANY,
*Defendant-Appellee.*

No. 01-2450

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-01-169, BK-97-52161C-7-W, AP-97-6061-W)

Argued: May 8, 2002

Decided: June 4, 2002

Before NIEMEYER and MOTZ, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the United States
Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Jeffrey S. Lisson, Winston-Salem, North Carolina, for
Appellant. James Howard Kelly, Jr., KILPATRICK STOCKTON,

L.L.P., Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Susan H. Boyles, KILPATRICK STOCKTON, L.L.P., Winston-Salem, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Darrell Wilson and Jerri Russell initiated this declaratory judgment action, seeking a determination that the Cincinnati Insurance Company ("Cincinnati") had a duty to defend and indemnify them under a policy held by Russell. The case was subsequently removed to the bankruptcy court, which after a bench trial ruled in favor of Cincinnati. Wilson appealed part of the bankruptcy court's decision, and the district court affirmed. Wilson now appeals from the district court's ruling, and we affirm.

Russell, doing business as T & J Ventures, provided wealth management and security services. From February 1994 until May 1996, Russell employed Darrell Wilson, a licensed private investigator, to oversee security for a client family, the Statons. During the term of Wilson's employment, Russell held a comprehensive general liability policy issued by Cincinnati.

In 1996, the Statons filed suit against Russell and several of her employees and associates, including Wilson, asserting a number of claims. The only claim relevant to this appeal is that Wilson assertedly converted two armored vehicles and a number of weapons that the Statons entrusted to him to provide for their security. Specifically, the complaint alleges that Wilson "caused certain [armored] vehicles . . . to be titled in his own name," and demanded "payment in excess of $10,000" for their return; and that Wilson "order[ed] the security employees under [his] supervision . . . to deliver [certain]

Armaments to a third party in Colombia ("the Colombian Agent") [named Jaime Saenz] who was acting in concert with Wilson and [Russell]."

Wilson and Russell requested a defense from Cincinnati, and when the company declined they filed a declaratory judgment action seeking a determination of their rights. To support his claim, Wilson submitted deposition testimony he had given in the underlying suit. In this testimony, Wilson asserted that the vehicle titles were transferred without his permission or knowledge, by an attorney associated with the Statons, and that afterwards Wilson was "at all times . . . willing and able" to return the vehicles. Wilson also testified that he did not transfer the armaments to Saenz or order them transferred, and that he "d[id] not know" how Saenz obtained them.

The parties filed cross-motions for summary judgment. At a hearing on these motions, the parties informed the court that they had already developed all the evidence they proposed to use at trial, and consented to have the court determine the case at a bench trial. Accordingly, the bankruptcy court "considered the evidence offered by the parties," and "ma[de] findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure." *Russell v. Cincinnati Ins. Co.* (*In re Russell*), No. 97-6061, slip op. at 2 (Bankr. M.D.N.C. Jan. 3, 2001).

The bankruptcy court noted that Wilson was entitled to coverage only if the loss of vehicles and weapons constituted an "occurrence," which is defined in the policy as "an accident . . . ." *Id.* at 13. The court did not credit Wilson's testimony, and determined instead that he had been sued for converting the vehicles and weapons, as alleged in the Statons' complaint. Because conversion is an intentional deprivation of property, and not an accident, the court held that Cincinnati had no duty to defend or indemnify Wilson on these claims. As an alternative basis for its holding, the bankruptcy court also stated that two policy exclusions appeared to bar coverage.

Wilson appealed to the district court. The district court determined that the bankruptcy court's findings of facts were not clearly erroneous, and affirmed. *Russell v. Cincinnati Ins. Co.* (*In re Russell*), No. 01-CV00169 (M.D.N.C. Oct. 30, 2001).

At some time after the bankruptcy court's ruling, (the record does not disclose the exact date) the underlying suit was settled. The settlement did not require Wilson to make any payment to the Statons, rendering his claim for indemnity moot. The only issue remaining is his duty to defend claim.

On appeal, Wilson contends that he is entitled to a defense because he testified that any losses to the Statons resulted from his negligence. He asserts that this testimony establishes a possibility of coverage, and that such a possibility is sufficient to invoke the duty to defend.

We disagree. Under North Carolina law, which governs this case, "when the pleadings allege facts indicating that the event in question is not covered," then the insurer ordinarily is not bound to defend. *Waste Management of Carolinas v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986). An exception arises only "[w]here the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy." *Id.* If so, "the insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of his own defense." *Id.*

In this case, it is plain that the complaint asserts intentional acts of conversion, rather than covered occurrences: Wilson assertedly held the Statons' vehicles for ransom, and had his men deliver the Statons' weapons to an associate without permission or consideration. It is also plain that the bankruptcy court did not accept Wilson's testimony that the facts were otherwise.* We review the bankruptcy court's findings of fact for clear error, and after reviewing the record, we, like the district court, hold that the bankruptcy court's findings were not clearly erroneous. *See In re Morris Communications NC, Inc.* 914 F.2d 458, 467 (4th Cir. 1990) (citation omitted).

---

*Even if the bankruptcy court had credited Wilson's testimony, it would not assist him here because the testimony does not support a theory that Wilson acted only negligently. Rather, according to Wilson, he did nothing wrong — and so was not liable under any theory. North Carolina law does not require an insurer to defend an insured who claims to be free of liability, only one that is sued within the field of insured risks.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.